IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSICA MANZANARES,

     Plaintiff,

v.                                     Civ. No. 21-2 GBW

KILOLO KIJAKAZI,
*Acting Commissioner of the Social
Security Administration*,

     Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Opposed Motion to Reverse and/or Remand. *Doc. 25*. For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFIRMS the judgment of the SSA.

### I.   PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI and SSI on March 6, 2018, alleging disability beginning June 27, 2017. Administrative Record ("AR") at 218. Plaintiff's application was denied on initial review on August 30, 2018, AR at 130, 134, and again on reconsideration on April 12, 2019, AR at 145, 151. On February 13, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 33–63. The ALJ issued an unfavorable decision on April 2, 2020. AR at 9, 25. Plaintiff sought review from the Appeals Council, which denied review on November 10, 2020, AR at 1, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On January 4, 2021, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision.  *See doc. 1*.  On October 7, 2021, Plaintiff filed her Opposed Motion to Reverse and/or Remand.  *See doc. 25*.  The Commissioner responded on January 31, 2022.  *See doc. 32*.  Briefing on Plaintiff's Motion was complete on February 22, 2022, *see doc. 34*, with the filing of Plaintiff's reply, *see doc. 33*.

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting [her] decision, the ALJ also must

2

discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.   ALJ EVALUATION

### A.   Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she

---

[1] Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability and other relevant regulations are the same for both benefits but are codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id*. at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, she

proceeds to step five of the evaluation process.  At step five, the burden of proof shifts

to the Commissioner to show that the claimant is able to perform other work in the

national economy, considering the claimant's RFC, age, education, and work

experience.  *Grogan*, 399 F.3d at 1261.

### B.  The ALJ's Decision

On April 2, 2020, the ALJ issued a decision denying Plaintiff's application for

SSDI and SSI.  *See* AR at 25.  In denying Plaintiff's application, the ALJ applied the five-

step sequential analysis.  At step one, the ALJ found that Plaintiff had "not engaged in

substantial gainful activity since June 27, 2017, the alleged onset date."  AR at 14.  At

step two, she found that Plaintiff has "the following severe impairments: migraine

headaches, degenerative disc disease (DDD) of the lumbar spine, osteophytosis of the

sacroiliac joint, major depressive disorder (MDD), generalized anxiety disorder (GAD),

borderline personality disorder (BPD), and post-traumatic stress disorder (PTSD)."  AR

at 15.  She also noted that Plaintiff has "hearing loss, sleep apnea, and obesity," but

found these conditions non-severe.  *Id.*  At step three, the ALJ found that Plaintiff's

severe impairments—both individually and in combination—did not meet or equal the

severity of an impairment in the Listings.  AR at 15-17.

At step four, the ALJ found that Plaintiff does not have the RFC to return to her

past employment as a paralegal (Dictionary of Occupational Tables ("DOT") 119.267-

026); court clerk (DOT 243.362-010); receptionist (DOT 237.367-038); or medical records

clerk (DOT 245.362-010), AR at 23, but does have the RFC "to perform light work as

defined in 20 CFR 404.1567(b)," subject to several physical and mental limitations, AR at

17.  With respect to Plaintiff's mental limitations, the ALJ found that  Plaintiff "is able to

understand, remember, and carry out simple instructions," and "maintain attention and

concentration to perform and persist at simple tasks for two hours at a time without

requiring redirection to task."  *Id.*  The ALJ also found that Plaintiff "can have only

occasional contact with the general public and superficial interactions with co-workers

and supervisors" and "requires work involving no more than occasional change in the

routine work setting and no more than occasional independent goal setting or

planning."  *Id.*

In making these findings, the ALJ concluded that Plaintiff's medically

determinable impairments could reasonably be expected to cause her alleged

symptoms.  AR at 18.  She held, however, that Plaintiff's statements about the intensity,

persistence, and limiting effects of her symptoms were not consistent with the medical

evidence and other evidence in the record.  *Id.*  She found persuasive the medical

opinion of state agency psychological consultant Dr. Doughty and found less

persuasive the opinions of consulting physician Dr. Athanasios Manole and treating

physician Dr. Samantha Baca.  AR at 21-22.  She also found less persuasive the opinions

of Plaintiff's treating psychiatrist, Dr. Stephanie Tucker, Plaintiff's treating therapist,

Olivia Heath, and consultative examiner Dr. Paula Hughson.  AR at 22-23.

At step five, the ALJ considered Plaintiff's age, education, work experience, and

RFC and determined that she can perform jobs that exist in significant numbers in the

national economy.  AR at 24-25.  Specifically, the ALJ found that Plaintiff can perform

the requirements of three representative occupations: (1) photocopy machine operator

(DOT 207.685-014); (2); cleaner, housekeeping (DOT 323.687-014); and (3) silver wrapper

(DOT 318.687-018).  *Id.*  Accordingly, the ALJ concluded that Plaintiff was not disabled

(as the Social Security Act defines the term) from June 27, 2017, through the date of her

decision.  AR at 25.

## IV.   ANALYSIS

Plaintiff asserts that the ALJ erred at step four in two ways: by (1) failing to

"properly weigh the opinions of treating/examining physicians" Dr. Tucker, Ms. Heath,

and Dr. Hughson, *see doc. 25* at 23-27; and (2) failing to "properly consider" Plaintiff's

symptom testimony, *id.* at 27-28.  Defendant disputes each of these arguments.  *See*

*generally doc. 32*.  For the reasons explained below, the Court agrees with Defendant.

### A.   <u>The ALJ's Determination that Dr. Tucker, Ms. Heath, and Dr. Hughson's Opinions Were Not Consistent With Other Evidence in the Record Was Not in Error.</u>

The ALJ's Determination that Dr. Tucker, Ms. Heath, and Dr. Hughson's

opinions were not consistent with other evidence in the record was not in error because the ALJ's consideration of these medical providers' opinions complied with the requirements set forth in 20 C.F.R. § 404.1520c and is supported by substantial evidence.

### i. The ALJ Applied the Correct Legal Framework

Because Plaintiff applied for SSDI benefits after March 27, 2017, the regulation applicable to the ALJ's evaluation of medical source opinions in the administrative record is 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021). Prior to March 27, 2017, the framework for analyzing the opinions of medical sources was provided by the Treating Physician Rule, which originated in circuit court decisions and was later formally adopted by the Social Security Administration in a 1991 Rule. *See Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *3 (N.D. Okla. Feb. 14, 2022) (discussing the history of the Treating Physician Rule). The Treating Physician Rule required ALJs to give greater weight to "the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment [than to] reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) (quoting *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)). Section 404.1520c eliminates the Treating Physician Rule by neither assigning specific evidentiary weight nor deferring to any medical opinions. 20 C.F.R. §

404.1520c(a).  It also changes the unit of evaluation from a medical opinion to a medical

source.  *Id.* § 404.1520c(a), (b)(1) (requiring the ALJ to evaluate the medical opinions

from a single source together instead of considering each medical opinion from one

medical source individually).

The Court rejects Plaintiff's contention that Tenth Circuit precedent applying the

Treating Physician Rule remains controlling despite the Social Security

Administration's update to its regulations, as many other district courts have already

done, *see Crystal R. E.*, 2022 WL 446023, at *5 (collecting cases).  First, in arguing that the

effect of 20 CFR § 404.1520c is to "short-circuit[] the analysis of a claim because of

administrative expediency," *doc. 25* at 21, and deprive claimants of the opportunity to

have "all of the evidence considered" by an ALJ, *id.*, Plaintiff appears to misunderstand

the relationship between § 404.1520c(b)'s articulation requirements, the factors ALJs

consider pursuant to § 404.1520c(c) when considering medical opinions and prior

administrative medical findings, and ALJs' obligation to "review all of the evidence

relevant to [a] claim."  *See* 20 C.F.R. § 404.1520b; *id.* § 404.1520c(b), (c).  The 2017 Rule

changed the prioritization of the factors ALJs consider and the requirements applicable

to an ALJs' articulation of how they considered the factors, but it does not absolve ALJs

of their responsibility to "consider all relevant evidence in the case record in reaching

their disability determination."  *Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5

(D.N.M. May 25, 2021) (citing *Silva v. Saul*, Civ. No. 19-913 WJ/KK, 2020 WL 4220862, at

*4 (D.N.M. July 23, 2020), *report and recommendation adopted*, 2020 WL 7890832 (D.N.M.

Aug. 7, 2020)); *Crystal R. E.*, 2022 WL 446023, at *5.

Plaintiff is also mistaken that *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983),

remains good law to the extent it requires ALJs to assign greater persuasive value to

examining source opinions than to those from non-treating and non-examining sources.

The Supreme Court has established that where a prior judicial construction of a statute

conflicts with an agency's subsequent interpretation entitled to *Chevron* deference, the

judicial construction forecloses the agency's construction "only if the prior court

decision holds that its construction follows from the unambiguous terms of the statute

and thus leaves no room for agency discretion."  *Nat'l Cable & Telecomms. Ass'n v. Brand

X Internet Servs.*, 545 U.S. 967, 982 (2005).  The Tenth Circuit precedent that embodies

the Treating Physician Rule outside of the 1991 Rule was not compelled by

unambiguous statutory language, as the Social Security Act is silent as to the proper

method for evaluating a treating physician's medical opinion.  *See Crystal R. E.*, 2022 WL

446023, at *5 (citing 42 U.S.C. § 423(d)(5)(B)); *Jones v. Saul*, No. 2:19-cv-01273 AC, 2021

WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) (holding that analogous circuit precedent

establishing the Ninth Circuit's construction of the Treating Physician Rule was not

compelled by unambiguous statutory language).  Therefore, the 2017 Rule displaces

contradictory Tenth Circuit precedent unless it is not entitled to *Chevron* deference—i.e., unless it is arbitrary, capricious, or manifestly contrary to a statute.  *See Harris v. Saul*, Civil Action No 19-cv-03715-NRN, 2021 WL 406080, at *4 (D. Colo. Feb. 5, 2021); *Crystal R. E.*, 2022 WL 446023, at *5.

Plaintiff does not make any arguments concerning whether the 2017 Rule is arbitrary and capricious, so the Court need not reach the issue.  *See Keener v. Saul*, Case No. CIV-20-649-SM, 2021 WL 2460614, at *4 (W.D. Okla. June 16, 2021); *Miles v. Saul*, Civil Action No. 20-cv-1456-WJM, 2021 WL 3076846, at *4 n.3 (D. Colo. July 21, 2021).  Nevertheless, the Court notes other district courts' determinations that the 2017 Rule is not arbitrary, capricious, or contrary to statute.  *See Novak v. Saul*, Case No. CIV-20-203-STE, 2021 WL 1646639, at *3 (W.D. Okla. Apr. 27, 2021); *Jones*, 2021 WL 620475, at *7; *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883 (D. Vt. 2021).  The Court therefore finds that Plaintiff's arguments concerning the continued applicability of the Treating Physician Rule are without merit and analyzes whether the ALJ properly analyzed Dr. Tucker, Ms. Heath, and Dr. Hughson's medical source opinions under 20 C.F.R. § 404.1520c.

### ii. The ALJ's Determination that Dr. Tucker, Ms. Heath, and Dr. Hughson's Opinions Were Not Consistent With Other Evidence in the Record is Supported by Substantial Evidence

Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant;

specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu*, 2021 WL 2794533, at *5 (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)).  As the most important of the five factors, *see id.* at *6, supportability and consistency are the only two that the ALJ must explain when assessing the persuasiveness of a medical source's opinions, 20 C.F.R. § 404.1520c(b)(2).

The factor of consistency "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Zhu*, 2021 WL 2794533, at *6 (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).  When assessing the consistency of a medical source's opinions, "all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Lobato v. Kijakazi*, Civ. No. 21-207 JB/KK, 2022 WL 500395, at *11 (D.N.M. Feb. 18, 2022) (quoting *Grogan*, 399 F.3d at 1262).  The ALJ also cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his position and disregarding those that are not. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  This requirement, though, does not mean that the ALJ must discuss every piece of controverted evidence. *See Clifton*, 79 F.3d at 1009-10.  Rather, it merely requires the ALJ to show that he considered evidence unfavorable to his findings before making them.  *See id.* at 1010.

Here, after discussing the supportability of Dr. Tucker, Ms. Heath, and Dr.

Hughson's opinions, *see* AR at 22-23, the ALJ found they were not consistent with:

> [Plaintiff's] demonstrations of normal mental functioning, reported
> improvement in her mental symptoms, lack of inpatient or emergency
> psychiatric treatment after August 2018, cessation of medication without
> prior medical consultation, reported engagement in multiple public and
> household activities, . . . repeated attempts to obtain at least semi-skilled
> employment[,] [and] Dr. Tucker's lack of significant treatment adjustments.

AR at 22.  Plaintiff brings six challenges to the ALJ's consistency findings.  *See doc.* 25 at

23-27.

First, Plaintiff challenges the ALJ's finding that these opinions were contradicted

by evidence of Plaintiff's normal mental functioning and improving mental symptoms.

Plaintiff argues that the ALJ "fail[ed] to consider all the important evidence," such as

abnormal mental findings in Plaintiff's medical records evidencing, *inter alia*, "anxiety,

anxiousness, insight/judgment that are only fair, and tearfulness."  *Doc.* 25 at 23-24.

Plaintiff argues that the ALJ impermissibly "cherry picked" evidence by considering

only Plaintiff's "normal" mental demonstrations at medical appointments and ignoring

Plaintiff's abnormal demonstrations.  *Id.* at 24.  The Court disagrees.  Although the ALJ

did not explicitly discuss every abnormal mental finding in Plaintiff's medical records,

she was not required to do so, *see Clifton*, 79 F.3d at 1010, and the ALJ *did* discuss

various evidence of abnormal mental findings from June 2018 through November 2019

in an earlier portion of her opinion, *see, e.g.*, AR at 20 (noting that plaintiff "complained

of medication side effects and increased psychiatric symptoms in June 2018"); *id.* ("[i]n

September 2019, she said she could not deal with crowds, she reported that small things

made her panic, and she complained that she experienced panic and anxiety 'almost

every day'"); *id.* ("she complained of substantially increased psychiatric symptoms in

November 2019"); AR at 21 (noting that in a March 2019 consultative examination with

Dr. Hughson, Plaintiff "was tearful at times;" "displayed energetic movements and

reported experiencing delusions;" and "Dr. Hughson diagnosed her [with] PTSD and

BPD"). The ALJ explained her reason for concluding that the evidence of abnormal

mental findings did not outweigh the evidence of normal mental findings. *See, e.g., id.*

at 20-21 (noting that Plaintiff's increase in psychiatric symptoms in June 2018 were

contemporaneous with her decision to cease taking all of her medications and that in

June 2018 Plaintiff "exhibited normal functioning with respect to attitude, motor

activity, alertness, orientation, concentration, and memory … despite her complete lack

of medication"); *id.* at 20 (noting that despite Plaintiff's reported increase in psychiatric

symptoms in November 2019, her treating psychiatrist did not change her treating

regimen and one month later indicated that Plaintiff was "stable."). Because the ALJ

did not fail to discuss or weigh various abnormal mental findings, the Court is satisfied

that she did not "cherry pick" evidence and appropriately considered evidence that

tended to contradict her ultimate conclusion regarding the consistency of Dr. Tucker,

Ms. Heath, and Dr. Hughson's opinions.  *See Armijo v. Saul*, CIV No. 19-1003 GJF, 2020

WL 7056071, at *9 (D.N.M. Dec. 2, 2020) (finding that an ALJ did not cherry pick

evidence in the record related to three alleged mental impairments of the plaintiff

where the ALJ discussed treatment notes discussing those impairments that tended to

support a finding of "disabled").

      Plaintiff next argues that the ALJ "fails to consider all the important evidence in

determining that Plaintiff's symptoms were improving or were 'manageable,'" based on

treatment notes in the record indicating that "Plaintiff's symptoms [were] not

'manageable' and that any improvement is fleeting and temporary."  *Doc. 25* at 24.  The

Court disagrees that the ALJ ignored evidence in finding that Plaintiff reported

improvement in her symptoms during the course of her alleged period of disability.

The ALJ specifically noted that Plaintiff alternated between reporting improved mental

symptoms and reporting increased symptoms.  *See, e.g.*, AR at 20 (noting that in March

2018, Plaintiff reported "that her depression was 'better' and her anxiety was 'much

better,'" but in June 2018 "she complained of medication side effects and increased

psychiatric symptoms"); *id.* (noting that during the winter of 2018 to 2019, Plaintiff's

treatment notes indicated that her anxiety had improved and that her anxiety was

manageable, but by the summer of 2019 she had restarted therapy and was diagnosed

with PTSD, and by the fall of 2019 she had panic and anxiety almost every day and

reported increased psychiatric symptoms).  As explained previously, the ALJ was not

obligated to discuss every piece of evidence Plaintiff identifies in her Motion as

supportive of a finding that Plaintiff's mental symptoms were not manageable.  *See*

*Clifton*, 79 F.3d at 1009–10; *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).  The Court

is satisfied that the ALJ did not fail to consider such evidence and therefore defers to the

ALJ's weighing of the evidence.

      Plaintiff's third challenge is to the ALJ's finding that Dr. Tucker, Ms. Heath, and

Dr. Hughson's opinions were inconsistent with Plaintiff's "repeated attempts to obtain

at least semi-skilled employment."[2]  AR at 22; *doc. 25* at 25.  Plaintiff asserts that "[t]he

ALJ fail[ed] to meaningfully explain how Plaintiff's searching for work and attempting

to work is at all inconsistent with Plaintiff's symptom allegations and the

treating/examining source opinions," and that "the fact that Plaintiff lasted five (5) days

at Sandia Labs due to panic attacks . . .  is highly supportive of the treating/examining

physician opinions that Plaintiff has at least marked limitations in adapting to

---

[2] Plaintiff cites *Ward v. Apfel*, 65 F. Supp. 2d 1208, 1214 (D. Kan. 1999) for the proposition that "[e]vidence that a claimant desires to work makes his/her disability claim more believable."  *Doc. 25* at 25.  The Court finds that *Ward* is inapposite here and does not stand for such a broad proposition.  In *Ward*, the court overturned an ALJ's adverse credibility determination that was the basis for the ALJ's discounting of the plaintiff's subjective symptom allegations.  65 F. Supp. 2d at 1214.  In overturning the ALJ, the court noted various evidence in the record that corroborated the plaintiff's subjective symptom allegations, including her "consistent work history" and "numerous attempts to return to work."  *Id.*  *Ward* addressed the propriety of an ALJ's credibility determination and did not address the relevant issue here: whether substantial evidence supports the ALJ's determination that various medical source opinions are not persuasive based on their inconsistency with various pieces of evidence in the record.

workplace changes and will miss more than three days of work per month." *See doc.* 25

at 25. Plaintiff's argument that the ALJ erred by not providing a more "meaningful[]"

explanation for how she considered evidence of Plaintiff's work attempts is

unpersuasive because the fact that Plaintiff "lasted five (5) days at Sandia Labs due to

panic attacks," *see doc. 25* at 25, does not forcefully contradict the ALJ's reasoning that

Plaintiff's history of work attempts are inconsistent with the marked limitations

assessed by the three medical opinions at issue. *See Collins v. Colvin*, CIV No. 14-864

CG, 2015 WL 13662815, at *5-6 (D.N.M. July 7, 2015) (finding that the ALJ did not err by

failing to more thoroughly consider evidence that tended to demonstrate that plaintiff's

work attempts ended due to his impairments because such evidence was not

inconsistent with the RFC assessed by the ALJ and quoting *Howard v. Barnhart*, 379 F.3d

945, 947 (10th Cir. 2004)("When the ALJ does not need to reject or weigh evidence

unfavorably in order to determine a claimant's RFC, the need for express analysis is

weakened.")). Plaintiff's position at Sandia Labs was as an administrative assistant, *see*

AR at 1021, 1056, a position which requires "[d]irecting, controlling, or planning

activities of others;" "[m]aking judgments and decisions;" "[d]ealing with people;" and

"[p]erforming a variety of duties," DOT 169.167-010, 1991 WL 647424. Based on the

requirements of the position, the Court is unable to conclude that only marked

limitations—and not slight or moderate limitations—would preclude a claimant from

successfully working as an administrative assistant.  Indeed, such a determination is properly the subject of a vocational expert's testimony rather than for the Court. Therefore, the Court is not persuaded that the ALJ made a reversible error in finding that Plaintiff's work attempts were inconsistent with Dr. Tucker, Ms. Heath, and Dr. Hughson's opinions.

Plaintiff's next challenge is to the ALJ's finding that Dr. Tucker, Ms. Heath, and Dr. Hughson's opinions were inconsistent with Dr. Tucker's decision to not make significant adjustments to Plaintiff's treating regimen in 2019 on the basis that the ALJ "is not a doctor" and "fail[ed] to meaningfully explain" this finding,. *Doc. 25* at 26. Plaintiff also argues that Dr. Tucker's decision to continue Plaintiff's treatment is consistent with the medical opinions at issue because "[i]f anything, [the] decision to continue treatment is likely due to Plaintiff having been subjected to numerous previous medication trials that were all either ineffective or caused intolerable side effects," "all other treatment options had been exhausted[,] and Dr. Tucker had no choice but to continue the current regimen." *Id.*

To the extent Plaintiff argues that ALJ's consideration of Dr. Tucker's lack of treatment adjustments was improper because it resulted in the ALJ expressing a medical opinion, the Court disagrees.  The course of treatment prescribed by a treating physician is clearly within the purview of factors that the applicable regulations permit

ALJs to consider in assessing a medical opinion.  *See* 20 C.F.R. § 404.1520c(c)(3).  And,

given that Dr. Tucker's prescribed course of treatment was properly considered by the

ALJ pursuant to 20 C.F.R. § 404.1520c(c)(3), the Court rejects Plaintiff's argument

concerning the ALJ's alleged failure to offer a more substantial explanation of how she

considered this factor because Plaintiff cites to no legal basis for any such obligation.

*See Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007) ("A party's failure to cite any

authority 'suggests either that there is no authority to sustain its position or that it

expects the court to do its research.'" (quoting *Rapid Transit Lines, Inc., v. Wichita*

*Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970))).

　　　Turning to Plaintiff's remaining arguments concerning the more "likely" reasons

for why Dr. Tucker did not adjust Plaintiff's treatment plan, the Court notes that

Plaintiff cites to no support in the record for her contentions that Dr. Tucker was

making treatment decisions based on "Plaintiff having been subjected to numerous

previous medication trials" and "all other treatment options had been exhausted."  *See*

*Doc. 25* at 26.  The Court has reviewed Dr. Tucker's treatment notes evidencing her

decision to not adjust Plaintiff's treatment despite Plaintiff's reported increase in

symptoms and finds that the ALJ's interpretation of that decision is at least as plausible

as Plaintiff's.  *See* AR at 1064, 1065, 1068, 1072.  It is not the Court's role to "displace the

[Commissioner's] choice between two fairly conflicting views," *see Zoltanski v. F.A.A.*,

372 F.3d 1195, 1200 (10th Cir. 2004), so the Court does not find that Plaintiff's

interpretation of Dr. Tucker's treatment strategy prevents the ALJ's decision from being

supported by substantial evidence.

Plaintiff's fifth challenge is to the ALJ's finding that Dr. Tucker, Ms. Heath, and

Dr. Hughson's opinions were inconsistent with Plaintiff's "cessation of medication

without prior medical consultation" in June 2018.  *See doc. 25* at 26; AR at 20, 22.

Plaintiff argues that "[t]o the extent the ALJ proposes that this instance is an example of

'non-compliance[,]' the ALJ has a duty to consider the reason for said non-compliance

and make a determination as to whether compliance would have resulted in

meaningful improvement in symptoms."  *Doc. 25* at 26 (citing SSR 16-3p, 2017 WL

5180304 (Oct. 25, 2017)).  Plaintiff correctly points out that the applicable regulations

preclude ALJs from "find[ing] an individual's symptoms inconsistent with the evidence

in the record on this basis without considering possible reasons he or she may not

comply with treatment or seek treatment consistent with the degree of his or her

complaints."  SSR 16-3p, 2017 WL 5180304, at *9.  However, the Court disagrees that the

ALJ failed to consider potential reasons for Plaintiff's cessation of her medication in

June 2018, including Plaintiff's "well-documented history of being difficult to treat due

to fear of medication and sensitivity to medication side effects."  *Doc. 25* at 26.  To the

contrary, the ALJ explicitly noted that Plaintiff "complained of medication side effects

and increased psychiatric symptoms" concurrent with her decision to cease taking her medication.  AR at 20.  Given that the ALJ properly considered the circumstances that may have contributed to Plaintiff's cessation of her medication in June 2018, the Court finds no error in the ALJ's finding that Plaintiff's symptom allegations were inconsistent with the record evidence on this basis.

Plaintiff's sixth and final challenge to the ALJ's adverse consistency finding for Dr. Tucker, Ms. Heath, and Dr. Hughson's treating/examining source opinions is to the ALJ's finding that they were inconsistent with Plaintiff's "reported engagement in multiple public and household activities," *see* AR at 22, such as "exercising and volunteering at [Plaintiff's] son's school," *doc. 25* at 26.  Plaintiff argues that the ALJ erred in inferring from Plaintiff's participation in such activities that her limitations were less severe than those assessed by Dr. Tucker, Ms. Heath, and Dr. Hughson because Plaintiff's physicians had encouraged her to take part in such activities.  *Doc. 25* at 26-27.  Additionally, Plaintiff asserts that the ALJ failed to develop the record as to "the extent of Plaintiff's exercise or volunteering at her son's school."  *Id.*

The Court is unable to agree with the logic of Plaintiff's first argument and rejects it.  Plaintiff's ability to engage in exercise and routine tasks is not necessarily consistent with the limitations opined by Dr. Tucker, Ms. Heath, and Dr. Hughson simply because Plaintiff may have undertaken these activities upon the advice of a

21

treating physician.  Even if Dr. Tucker, Ms. Heath, and Dr. Hughson had been the

"doctors [who] advised Plaintiff to engage in exercise and routine tasks to feel

productive," *see doc. 25* at 27, which they were not, *see* AR at 847 (treatment record from

Dr. Elaine Papafrangos reflecting that Dr. Papafrangos advised Plaintiff to attempt to

exercise and perform routine tasks); AR at 1015-1026, 1036-39, 1284-1286

(treating/consulting source opinions of Dr. Tucker, Ms. Heath, and Dr. Hughson), one

would expect a treating physician to advise a patient to undertake actions that would

cause her symptoms to become less severe (as opposed to those actions being consistent

with marked limitations).  Indeed, as noted by the ALJ, *see* AR at 20, the reason why

Plaintiff was told to "try to establish as normal of a life and routine as she can,

incorporat[e] exercise as much as tolerated, and spend[] time with her family," among

other "routine tasks on a daily basis" was to ameliorate her mental symptoms.

Therefore, the Court fails to understand how Plaintiff's ability to successfully undertake

certain activities upon the advice of one medical provider supports other medical

providers' opinions that Plaintiff has marked limitations.  More importantly, however,

the Court does not grasp—and Plaintiff fails to explain—why Plaintiff's reasons for

"engag[ing] in multiple public and household activities" should undercut the import of

Plaintiff's ability to perform such activities in the first place.  *Cf.* SSR 16-3P, 2017 WL

5180304, at *7 (stating that the ALJ will consider a plaintiff's daily activities to "evaluate

the intensity, persistence, and limiting effects of [her] symptoms").

The Court also disagrees that the ALJ did not adequately develop the record regarding the extent of Plaintiff's exercise or volunteering at her son's school. "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479–80 (10th Cir.1993)). "In considering whether the ALJ satisfied his duty to develop the record, the Court must consider whether sufficient questions were asked 'to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities.'" *Garcia v. Berryhill*, Civ. No. 16-789 GBW, 2017 WL 2392507, at *6 (D.N.M. May 12, 2017) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)); *Sparks v. Chater*, 107 F.3d 21, 1997 WL 43609, at *1 (10th Cir. Jan. 29, 1997) (unpublished table decision).

Here, the ALJ asked questions at the administrative hearing that elicited testimony from Plaintiff about what activities she is able to handle on a "good day" and a "bad day," including her ability to perform activities such as driving her son to school, helping him with his homework, and meditating. *See* AR at 49-50. The ALJ also asked questions that elicited testimony from Plaintiff regarding the frequency with

which she experiences "good days" and "bad days" in terms of the average number of days per week that she experiences each.  AR at 50.  Additionally, the ALJ elicited testimony from Plaintiff concerning her attempts to exercise at a gym close to her house, including the fact that Plaintiff had only gone twice.  AR at 57.  The Tenth Circuit has repeatedly held that when an ALJ questions a plaintiff at an administrative hearing regarding, *inter alia*, her "current condition and alleged impairments" and "daily activities," the ALJ satisfies her duty to develop the record, particularly when the plaintiff is represented by counsel at the hearing.  *Gibbs v. U.S. Dep't of Health & Hum. Servs.*, 38 F.3d 1220, 1994 WL 581650, at *2 (10th Cir. Oct. 20, 1994) (unpublished table decision); *Brumfield v. Shalala*, 1 F.3d 1249, 1993 WL 288344, at *1 (10th Cir. July 29, 1993) (unpublished table decision).  Based on the above-described exchanges between the ALJ and Plaintiff at the administrative hearing at which Plaintiff was represented by counsel, *see* AR at 35, the Court finds that the ALJ satisfied her duty to develop the record.

Furthermore, the Court disagrees with Plaintiff that the ALJ failed to develop the record concerning the "extent" of Plaintiff's exercise or volunteering at her son's school. In the ALJ's decision, she cited treatment notes stating that Plaintiff volunteers at her son's school during the day, AR at 20 (citing AR at 564), and that Plaintiff reported doing "cardio" three times per week for 30 minutes without problems, *id.* at 19 (citing

AR at 830).  The Court is not convinced that the ALJ's duty to develop the record

required her to uncover additional information about the frequency of Plaintiff's

activities, particularly because Plaintiff fails to cite any authority for the proposition that

the duty should extend so far.  *See Sparks*, 1997 WL 43609, at *1 (citing *Born v. Sec'y of*

*Health & Hum. Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990)).  In any event, there is no

apparent discrepancy between the information Plaintiff alleges would have been

uncovered through additional development of the record (*i.e.*, that Plaintiff's

volunteering only included "routine intermittent tasks") and the RFC assigned by the

ALJ, *see* AR at 17, so assuming for the sake of argument that the ALJ failed to develop

the record with regard to Plaintiff's volunteer activities, such an error would be

harmless.

   **B.**  **The ALJ's Rationale for Partially Discounting Plaintiff's Symptom
Testimony Is Supported by Substantial Evidence**

     Plaintiff's second argument is that the ALJ failed to properly consider Plaintiff's

symptom testimony because the ALJ "plainly cherry picks evidence, mischaracterizes

evidence, and/or fails to meaningfully consider the evidence tending to support

Plaintiff's symptom allegations."  *Doc. 25* at 27.  To the extent Plaintiff has adequately

raised these arguments,[3] the Court disagrees with Plaintiff's first and third assignments

---

[3] Plaintiff's challenges to the ALJ's consideration of her subjective symptom testimony cites to no legal authority—indeed, to no authority whatsoever—in support of her arguments.  Rather, she refers the Court to her briefing on her first argument concerning the ALJ's allegedly deficient consistency findings

of error in this argument and finds that Plaintiff has waived the second.

SSA regulations prescribe a two-step process for evaluating a claimant's statements about their mental impairments.  Step one asks "whether there is an underlying medically determinable . . . mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms."  SSR 16-3P, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(b).  If such an impairment is established at step one, step two requires the ALJ to "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*; 20 C.F.R. § 404.1529(c).  In making that assessment, the agency "consider[s] all of the available evidence from [the individual's] medical sources and nonmedical sources about how [his or her] symptoms affect [him or her]," including medical opinions, objective medical evidence, and "any other information [the individual] may submit about [his or her] symptoms."  20 C.F.R. § 404.1529(c). "[T]he 'RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts . . . and nonmedical evidence."  *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (quoting SSR 96-8p, 1996 WL 374184, at *7 (Aug. 19, 2013)).

Here, the ALJ identified the mental impairments that she was evaluating:

---

with regard to Dr. Tucker, Ms. Heath, and Dr. Hughson's opinions.  *See Doc. 25* at 27-28.

Plaintiff's depression and anxiety. *See, e.g.*, AR at 20. The ALJ found that Plaintiff "experiences substantial symptoms [from these impairments] that significantly limit her functioning," but that "her symptoms are less substantial and therefore less limiting than she alleges." AR at 21. In finding that Plaintiff's symptoms are less limiting than she alleges, the ALJ first recounted Plaintiff's treatment history for these conditions, including the fact that "she has been prescribed psychiatric medications and has undergone therapy." AR at 20. The ALJ also noted a mixed record with regard to Plaintiff's subjective complaints about her mental symptoms. *See, e.g., id.* (noting that Plaintiff reported in March 2018 "that her depression was 'better' and her anxiety was 'much better'"); *id.* (noting that in June 2018 Plaintiff reported that her psychiatric symptoms had worsened); *id.* (noting that Plaintiff had reported that prior to a hospital visit in August 2018, she was "functioning, despite still having anxiety"); *id.* (noting that she reported to medical providers in December 2018 and January 2019 that that "her anxiety had improved and that she had not been experiencing major depression"); *id.* (noting that in September 2019 Plaintiff reported that "she could not deal with crowds, . . . small things made her panic, and . . . she experienced panic and anxiety 'almost every day'"); *id.* (noting that Plaintiff reported "substantially increased psychiatric symptoms in November 2019"). The ALJ contrasted those symptom allegations with the treatment prescribed to Plaintiff by her various medical providers, including the advice of the

physicians who saw Plaintiff at her visits to the hospital to make lifestyle adjustments and implement dietary recommendations, *see id.*, and lack of treatment adjustments made by Dr. Tucker concurrent with Plaintiff's reports of experiencing "substantially increased psychiatric symptoms," *id.*  The ALJ also relied upon Plaintiff's reported daily activities and attempts to work, *see id.* (noting that Plaintiff "reported that she cleaned her house during the day and volunteered at her son's school" and "was looking for a job" in March 2018); *id.* (noting that Plaintiff reported starting a new job in March 2021); *id.* (noting that Plaintiff interviewed for a paralegal position in July 2019); *id.* (noting that Plaintiff had gone to the gym on multiple occasions and "gone to 'a couple of dance fit classes'" in November 2019 and January 2020).

Moreover, the ALJ evaluated Plaintiff's subjective mental symptom allegations against objective medical findings from Plaintiff's treating physicians, one of her hospital visits, and consultative examination, as well as against Plaintiff's hearing testimony concerning her ability to drive her son to school, attend therapy, and go to church.  *Id.* at 21.  Based on the foregoing, the Court finds that the ALJ relied on multiple sources of evidence when partially discounting Plaintiff's subjective symptom testimony and rejects Plaintiff's contention that the ALJ disregarded Plaintiff's symptom allegations based on only a few treatment notes.

For the above reasons and upon review, the ALJ's determination that Plaintiff's

28

symptoms were less severe than she alleged is supported by substantial evidence. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (finding that an ALJ's credibility determination was not in error where the ALJ "set[] forth the specific evidence he relie[d] on in evaluating the claimant's credibility"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." (quoting *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 777 (10th Cir.1990))).  The Court therefore rejects Plaintiff's contention that the ALJ cherry picked evidence or failed to meaningfully consider evidence supporting Plaintiff's symptom allegations.

Finally, the Court rejects Plaintiff's argument that the ALJ "mischaracterizes" evidence in partially discounting Plaintiff's symptom testimony.  Plaintiff points to no examples of evidence that the ALJ has purportedly mischaracterized and so has waived this argument. *See Candelario v. Barnhart*, 166 F. App'x 379, 382 n.2 (10th Cir. 2006) (holding that an argument set forth in a conclusory manner is waived).

### V.   CONCLUSION

For the foregoing reasons, the Court finds no reversible error in the ALJ's decision.  Therefore, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc. 25*) and AFFIRMS the Commissioner's decision.

29

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**